(C. D. 1539)

JOSEPH WEISS CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 30, 1953)

*Barnes, Richardson & Colburn* (*Edward N. Glad* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Joseph E. Weil* and *Richard E. FitzGibbon*, special attorneys), for the defendant.

Before Oliver and Mollison, Judges

Mollison, Judge: The merchandise the subject of these two protests, which were consolidated for trial and disposition, consists of a substance known as artificial corundum. It was assessed with duty at the rate of 1 cent per pound under the provision in paragraph 1514 of the Tariff Act of 1930 for "artificial abrasives, in grains," and is claimed to be properly dutiable at the rate of one-half of 1 cent per pound under the provision in the same paragraph, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, for "corundum, * * * in grains." The issue is therefore whether the provision for "corundum" in paragraph 1514 includes artificial as well as natural corundum, and, if it does, whether the provision for corundum is more specific with respect to this merchandise than the provision for artificial abrasives.

Counsel for the parties have stipulated:

(1) That the merchandise at bar is an artificial abrasive in grains;

(2) That it is produced by fusing aluminum oxide in an electric furnace;

(3) That corundum is crude aluminum oxide as found in nature;

(4) That fused aluminum oxide used for abrasive purposes is called artificial corundum; and

(5) That the merchandise at bar contains none of the elements in excess of the quantities mentioned in the last part of paragraph 1514.

The precise issue with respect to the scope of the tariff term "corundum," when unqualified, was raised in the case of *Larzelere & Co.* v. *United States*, the decision of our appellate court being reported in 8 Ct. Cust. Appls. 64, T. D. 37198. That case arose under the provisions of the Tariff Act of 1913, and the merchandise involved was artificial corundum. It was assessed with duty under paragraph 343 of that act as "emery, * * * ground" by similitude and was claimed to be entitled to free entry under the provisions of paragraph 479 of the same act providing for—

Emery ore and corundum, and crude artificial abrasives, not specially provided for.

The issue was stated in the opinion of the court as follows:

* * * So we conclude that the question of whether artificial corundum is included within the general term corundum stands for decision, or, to state the question in a broader way, whether an unqualified provision for a given article includes such named article made by artificial means.

The court proceeded at once to pass upon the issue as follows:

This question is not new. The subject was reviewed by DeVries, General Appraiser, in the cryolite case, G. A. 5575 (T. D. 24990). The article was invoiced as an artificial cryolite and was such in fact. It was held that as the language of the free list was unqualified in terms, providing for free entry of cryolite or kryolith, it should be held to include either natural or artificial cryolite.

See also G. A. 4398 (T. D. 20925), United States *v.* Schering (163 Fed., 246), and Klipstein *v.* United States (4 Ct. Cust. Appls., 510; T. D. 33936).

It must be held that the article here involved falls within the provision for corundum named in paragraph 479.

Counsel for the defendant herein argues in the brief filed in its behalf that the *Larzelere & Co.* case is not applicable or controlling because (1) in the Tariff Act of 1913 both corundum and crude artificial abrasives were included in the free list, and therefore the competition between the two provisions did not arise, and (2) the court specifically held in the *Larzelere & Co.* case that the material involved was not in a crude state and was therefore excluded from the provision for "crude artificial abrasives" in the 1913 act, whereas the word "crude" does not modify the tariff term "artificial abrasives" in the existing provision.

We are of the opinion that neither the reasons advanced by counsel for the defendant nor the state of the record in the case at bar warrants us in departing from the holding of the *Larzelere & Co.* case, which, in essence, lays down the rule that "an unqualified provision for a given article includes such named article made by artificial means."

Like all rules of statutory construction, of course, the foregoing must yield to a manifested contrary legislative intention, or to a paramount rule having for its purpose the ascertainment of the legislative intention, such as the rules of commercial designation, long-continued administrative practice, or legislative approval of judicial construction.

But no contrary legislative intention appears to be manifest from the context of the act or the involved competing provisions. Under the rule of the *Larzelere & Co.* case the merchandise is included within the tariff term "corundum." Under the stipulation of fact, it is also an "artificial abrasive," which is the competing tariff term. Between these two terms, there is no question but that "corundum" is the more specific, being the name of a thing, rather than of its class.

If at the time of the enactment of the Tariff Act of 1930 there existed for the tariff term "corundum" a meaning in the trade and commerce of the United States which was uniform, general, and definite and which excluded artificial corundum from its purview, it was incumbent upon the defendant under the circumstances of this case to establish that fact. The stipulated facts that "corundum is crude aluminum oxide as found in nature" and that "fused aluminum oxide used for abrasive purposes is called artificial corundum" are not the equivalent of proof that artificial corundum is excluded from the commercial meaning of the term "corundum."

No contrary long-continued administrative practice has been established, nor has any contrary judicial construction been cited.

In the brief filed on behalf of the defendant, its counsel argues by analogy as follows:

&ast; &ast; &ast; Artificial fruits may be made to so resemble bananas, apples, peaches, or grapes, that they are called artificial bananas, apples, peaches, or grapes, but would anyone suggest that artificial fruits are dutiable as bananas, apples, peaches, or grapes; particularly when there is a tariff provision for artificial fruits?

If the foregoing analogy purports to reflect the actual tariff situation with respect to the classification of natural and artificial fruits, it is an incomplete and misleading presentation. If it purports to depict a suppositious situation, it is valueless and proves nothing. The actual fact is that in the tariff provisions for fruits Congress has manifested the legislative intent to limit the provisions for bananas, apples, peaches, or grapes to the natural products by placing them in schedule 7, entitled "Agricultural Products and Provisions," and further by qualifying the provisions by appropriate language, such as "green or ripe," "in their natural state," etc. Having thus indicated the intent to exclude artificial fruits from the provisions of schedule 7, Congress went further and made specific provision for artificial fruits in paragraph 1518 under the schedule entitled "Sundries." Indeed, the tariff situation with respect to natural and artificial fruits indicates that Congress was well aware of the necessity to make separate provisions therefor.

On the record presented, we are of the opinion that the *Larzelere & Co.* case, *supra,* constitutes valid precedent under the rule of *stare decisis.* Judgment will therefore issue sustaining the protest claim for duty at the rate of one-half of 1 cent per pound under paragraph 1514, as modified by the General Agreement on Tariffs and Trade.