(C. D. 1882)

A. N. DERINGER, INC. *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided May 24, 1957)

Barnes, Richardson & Colburn (Eugene F. Blauvelt of counsel) for the plaintiff.
George Cochran Doub, Assistant Attorney General (William J. Vitale, trial attorney), for the defendant.

Before JOHNSON and DONLON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of duty on automobile tires at 15 per centum ad valorem under paragraph 216 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as articles, composed in part of carbon. It is claimed that the merchandise is properly dutiable at 10 per centum ad valorem under paragraph 1537 (b) of said tariff act, as modified, as automobile tires, composed wholly or in chief value of rubber.

Six entries are involved in this protest covering various shipments of automobile tires from Canada in February and March 1952. Duty was assessed on some of the tires under paragraph 1537 (b) as automobile tires in chief value of rubber, whereas the balance was classified under paragraph 216 as articles in part of carbon. The particular items involved herein were identified at the trial by Bernard H. Sullivan, customs examiner. They are 4-ply tires, manufactured by the Goodyear Co. in Canada, sizes known as 6.00 x 16, 6.70 x 15, and 7.10 x 15, more particularly identified in schedule "A," attached hereto and made a part hereof. Plaintiff has abandoned its claim as to an item on invoice No. 4 of entry No. 2737, since the witness was not sure whether this item was manufactured by Goodyear or Firestone.

There was introduced in evidence a breakdown of value and content of Goodyear tires of various sizes (defendant's exhibit A). It was agreed by the parties that the values stated percentagewise were correct. The table gives the following information as to 4-ply tires:

| | Size 640–15 Value | % | 670–15 Value | % | 710–15 Value | % |
|---|---|---|---|---|---|---|
| COTTON FABRIC | 2. 274 | 33. 4 | 2. 747 | 38. 3 | 2. 459 | 32. 4 |
| CRUDE RBR | 1. 773 | 26. 4 | 1. 919 | 26. 7 | 1. 950 | 25. 7 |
| SYN. RBR | 1. 541 | 22. 7 | 1. 559 | 21. 7 | 1. 749 | 23. 1 |
| CARBON BLK | . 398 | 5. 9 | . 380 | 5. 3 | . 415 | 5. 5 |
| OTHER MAT | . 795 | 11. 6 | . 574 | 8. 0 | 1. 011 | 13. 3 |

| | Size 760–15 Value | % | 800–15 Value | % | 820–15 Value | % |
|---|---|---|---|---|---|---|
| Cotton Fabric_____ | 2. 663 | 31. 0 | 2. 903 | 30. 7 | 2. 964 | 29. 3 |
| Crude Rbr_____ | 2. 768 | 32. 2 | 2. 980 | 31. 5 | 3. 241 | 32. 0 |
| Syn. Rbr_____ | 1. 852 | 21. 5 | 2. 191 | 23. 2 | 2. 427 | 24. 0 |
| Carbon Blk_____ | . 501 | 5. 8 | . 562 | 5. 9 | . 663 | 6. 5 |
| Other Mat_____ | . 819 | 9. 5 | . 819 | 8. 7 | . 825 | 8. 2 |

At a subsequent hearing, Bernard Bergon, a partner in Bergon & Zaager, dealer in automobile tires, testified as follows: He has been in the tire business and a distributor for Goodyear for 43 years. The tires on the invoice covered by entry No. 2737, size 7.10 x 15, are standard tires, as are other tires on the same invoice, sizes 7.60 x 15 and 8.00 x 15. They look alike and are of the same quality. "Everything is the same as far as we know, except the size." No pneumatic automobile tires are wholly of rubber; they contain other things, such as fabric. From 1912 until 1930, he had never heard of synthetic rubber in automobile tires. He first heard of it after World War II. Today, both synthetic and natural rubber are used in practically all automobile tires.

The price of tires is not dependent upon the amount of synthetic rubber therein. The manufacturer does not state how much synthetic rubber is in a tire. The witness considers tires containing synthetic rubber to be rubber tires.

Richard Fishbein, general manager of the London Tire Co., Inc., for 10 years, testified that his firm does a tire business of about a million dollars a year and has been a distributor for Goodyear for 23 years. The company had imported tires from Canada in 1952, and the witness was familiar with the invoice covered by entry No. 3111, which included Goodyear tires, sizes 7.10 x 15, 8.20 x 15, and 7.60 x 15. He said that such tires are standard Goodyear tires and differ only in size.

Just after the war, according to this witness, there was a synthetic rubber tire on the market for about 6 months that was marked S–3. However, at the present time and for the past several years, neither the Goodyear Co. nor other manufacturers mark tires to show synthetic rubber content. The invoices do not specify how much synthetic rubber and how much natural rubber are contained in the tires. They are sold on the market as rubber tires.

The question involved in this case is whether tires, composed of synthetic rubber, natural rubber, carbon, and other materials, but not in chief value of natural rubber, are classifiable, as assessed, under paragraph 216, as articles in part of carbon, or, as claimed, under paragraph 1537 (b), as automobile tires in chief value of rubber.

The pertinent provisions of the tariff act, as modified, are as follows:

Paragraph 216:

Articles or wares composed wholly or in part of carbon or graphite, wholly or partly manufactured, not specially provided for_____15% ad val.

Paragraph 1537 (b):

Automobile, motor cycle, and bicycle tires composed wholly or in chief value of rubber_____10% ad val.

If the term "rubber," as used in the provision in paragraph 1537 (b), *supra*, includes synthetic rubber, the tires herein, sizes 6.70 x 15 and 7.10 x 15, are in chief value of rubber; otherwise, they are not. (No evidence has been presented as to the composition of tires, size 6.00 x 16. As to such tires, the protest must be overruled.)

When the Tariff Act of 1930 was enacted, rubber substitutes were little known, and synthetic rubber was in the early laboratory stage. Trade Agreement Digests, November 1946, volume 15, part 2, page 258. As appears from the record herein, automobile tires in part of synthetic rubber were unknown at that time. However, tariff acts are made for the future, as well as the present, and are intended to bring within their provisions merchandise which is clearly described therein, although not known in commerce at the time the statute was passed. *United States* v. *L. A. Salomon & Bro.*, 22 C. C. P. A. (Customs) 490, T. D. 47483; *United States* v. *Burroughs-Wellcome Co., Inc.*, 43 C. C. P. A. (Customs) 142, C. A. D. 621. According to the case first cited, at the time of the enactment of the Tariff Act of 1930, it was thought that fuller's earth could not be artificially activated with acid, but a process for so treating it was perfected thereafter. It was held that fuller's earth so processed was classifiable as a clay or earth, artifically activated with acid.

Therefore, if synthetic rubber comes fairly within the term "rubber," as used in paragraph 1537 (b), tires composed partly of natural rubber and partly of synthetic rubber, in chief value of the two combined, would be classifiable as automobile tires in chief value of rubber.

The term "rubber," as used in the provision of paragraph 1537 (b) covering automobile tires, is unqualified. Generally, an unqualified provision for a given article includes such named article made by artificial means, unless there is a manifested contrary legislative intention, commercial designation, long-continued administrative practice, or legislative approval of judicial construction. *Joseph Weiss Co., Inc.* v. *United States*, 31 Cust. Ct. 17, C. D. 1539 (artificial corundum); *Larzelere & Co.* v. *United States*, 8 Ct. Cust. Appls. 64, T. D. 37198 (artificial corundum); *Jacob J. Vollrath Manufacturing Company* v. *United States*, 7 Treas. Dec. 190, T. D. 24990 (artificial cryolite); *Roessler & Hasslacher Chemical Co.* v. *United States*, 30

Treas. Dec. 61, T. D. 36077 (synthetic cryolite); *Wm. Pickhardt & Kuttroff* v. *United States*, 1 Treas. Dec. 641, T. D. 20925 (synthetic indigo); *Klipstein & Co.* v. *United States*, 4 Ct. Cust. Appls. 510, T. D. 33936 (indigo paste, produced from synthetic indigo); *Cochrane* v. *Badische Anilin & Soda Fabrik*, 111 U. S. 293 (artificial alizarine).

The story of the development of a process for the production of synthetic indigo, as brought out in the cited cases, bears some analogy to the history of synthetic rubber production. Since ancient times, indigo was obtained entirely from the leaves and twigs of a great number and variety of leguminous plants. The successful production of artificial alizarine from coal tar stimulated efforts to produce synthetic indigo from the same substance, and a method was discovered in 1881. The evidence in the *Pickhardt & Kuttroff* case, *supra*, established that, in practical use, synthetic indigo exhibited the essential characteristics and qualities of the dyestuff long known as indigo and that, in a chemical sense, its peculiar coloring principle, indigotin, was identical with that obtained from plants. In the Tariff Act of 1883, enacted subsequent to the discovery of synthetic indigo, free admission was provided for "indigo and artificial indigo," but, in later tariff acts, the words "artificial indigo" were omitted. The court held that, in providing for "indigo," Congress had in mind the particular constituent or constituents which gave the article its value as dyestuff in practical use, and that the omission of the words "artificial indigo" was not intended to exclude synthetic indigo, or artificial indigo, or indigo of any kind whatever, but was to guard against the exemption from duty of substances wholly different from indigo, which had been thus admitted under a misunderstanding of the meaning of the word "artificial." This construction was approved by our court of appeals in *Klipstein* v. *United States, supra.*

Plaintiff claims that the provision for automobile tires in chief value of rubber was intended by Congress to cover all types of rubber, including synthetic. Paragraph 1537 (b) provides not only for tires, wholly or in chief value of rubber, but for manufactures of india rubber, molded insulators and insulating materials, wholly or partly of rubber, and manufactures, wholly or in chief value of hard rubber. India rubber and hard rubber have long been distinguished by Congress. *Knauth, Nachod & Kühne* v. *United States*, 8 Ct. Cust. Appls. 102, T. D. 37220. Synthetic rubber and india rubber have also been distinguished (*Nat E. Berzen, Inc.* v. *United States*, 23 Cust. Ct. 24, C. D. 1183), and synthetic rubber and synthetic rubber articles have been provided for under paragraph 1558 by the General Agreement on Tariffs and Trade, T. D. 51802. It is evident, therefore, that the terms "india rubber," "hard rubber," and "synthetic rubber," as used in the tariff act, are distinguishable and must have narrower meanings

than the word "rubber," used without qualification. Under the principle of the cases cited on artificial substances, the latter would include rubber, produced by artificial means, provided it was the same substance or had the essential characteristics and qualities of the material known as rubber, or was known in the trade as rubber.

The synthesis of natural rubber was the object of much research during the last century and received the attention of some of the most eminent chemists during that period.[1] Some progress had been made in the production of synthetic rubber prior to World War II, but the synthetic rubber industry was developed during the war.[2] According to the authorities, the quality has been steadily improving. For instance, in the report of the Tariff Commission on rubber, cited below, it was stated (p. 5) that, for tires, mixtures of natural and synthetic rubber presented advantages over synthetic rubber used alone and that "the mixed product may approach natural rubber in quality, even for the most exacting uses." It was further noted (p. 58): "Although no synthetic rubber has all the properties of the natural product, some types are quite similar to it." A table on pages 64–65 of the same publication lists various types of synthetic rubber, including that used by various rubber companies in tires and tubes, and states that this type has properties very similar to those of natural rubber and has superior age resistance.

In the Trade Agreement Digests of November 1946, it was stated (volume 15, part 2, p. 144):

* * * Technological improvement in tire production (better fabric, improved construction, etc.) during the war has made possible the production of synthetic passenger-car tires which are in most respects equal to prewar first-line tires. It is possible that the tires of the future, which will probably be a combination of natural and synthetic rubber, may be superior to the best prewar tires.

In an article, entitled "Use of GR–S in Rubber Manufacturing," by R. A. Crawford, in Synthetic Rubber, a publication prepared under the auspices of the Division of Rubber Chemistry—American Chemical Society, 1954, it is stated (p. 545):

Originally GR–S [a type of synthetic rubber] was used in tires only of necessity and with great difficulty. * * *

Continuous and large-scale research and the development of polymerization recipes and other aspects of polymer manufacture resulted in gradual improvement of the polymer. * * * So that today many manufacturers produce passenger tires with GR–S treads that equal natural-rubber tires or even outlast them by as much as 10 per cent in treadwear. The use of "cold rubber" and new blacks has brought still further improvement, and synthetic-rubber treads can now be made that outwear natural-rubber treads by 15 to 25 per cent.

---

[1] See Historical Review, an article by R. F. Dunbrook, in a collection, entitled Synthetic Rubber, prepared under the auspices of the Division of Rubber Chemistry—American Chemical Society, 1954.

[2] See the following publications of the United States Tariff Commission: Trade Agreement Digests, November 1946, vol. 15, part 2, p. 58; War Changes in Industry Series, 1945, Report No. 6, Rubber, p. 55.

Because of improvement in the manufacture and use of GR–S, only recent treadwear comparisons are of any value. * * * In an analysis of 17 tests on the Government test fleet participated in by 11 companies, where comparisons of GR–S and natural rubber are possible, a composite rating shows GR–S the equal of natural rubber. Other Government tests indicate that GR–S is somewhat better than natural rubber in summer and also wears better on rear wheels. Other unpublished data confirm these Government tests, and it is considered that Fielding's rating for GR–S [90 per cent] is too low and that GR–S must be rated equal to natural rubber.

The record herein bears out the prognostication of the Tariff Commission that the tires of the future would be a combination of natural and synthetic rubber. Various-sized tires in these shipments contained both natural and synthetic rubber, but some contained a higher percentage of natural rubber than others. Where the natural rubber was in sufficient quantity to constitute the material of chief value, the tires were assessed with duty at 10 per centum ad valorem under paragraph 1537 (b), *supra*, as automobile tires in chief value of rubber. The others, including sizes 6.70 x 15 and 7.10 x 15, which contained a somewhat smaller percentage of natural rubber, were classified as articles, composed in part of carbon, and assessed with duty at 15 per centum ad valorem under paragraph 216, *supra*.

As to the effect of this difference in the amount of natural rubber in the tires, the witness Bergon testified:

Q. Were the Goodyear tires involved in this shipment, size 7.60 x 15 and 8.00 x 15, the same quality of Goodyear tires as the 7.10 x 15?—
 *      *      *      *      *      *      *
A. Same quality, identical.
 *      *      *      *      *      *      *
Q. And do you now understand as a part of your general experience that synthetic rubber is used in most automobile tires?—A. Yes, sir, synthetic rubber is used in most tires today.

Q. Do you as a merchant pay more or less for the tires dependent upon the amount of synthetic rubber contained therein?—
 *      *      *      *      *      *      *
A. We don't pay any more—tires are higher in price today than they used to be but we don't pay any more for them.
 *      *      *      *      *      *      *
Q. Do you regard automobile tires containing synthetic rubber as rubber automobile tires?—
 *      *      *      *      *      *      *
A. I consider them a rubber tire, yes.

The witness stated that 6-ply tires are more expensive than 4-ply and that some tires have a better grade of rubber and a stronger fabric in them. When asked whether he meant that such tires have more natural rubber than synthetic rubber, he said:

No, just have a better grade of rubber, treated a little bit different.

The witness Fishbein testified that his firm had imported 6.70 x 15 and 7.10 x 15 4-ply Goodyear tires and also other-sized tires, all of which were standard tires. While some of the tires imported were of

a premium grade, the witness stated that sizes 8.00 x 15 and 7.60 x 15 and 7.10 x 15 were identical. On cross-examination, he testified:

X Q. They don't specify on the invoice how much synthetic rubber is contained in it and how much natural rubber, and all that, is that what you mean?—A. That's right.

X Q. They just sold it to you as tires?—A. Rubber tires.

X Q. Rubber tires?—A. Yes, sir.

From this record, it appears that tires in part of synthetic rubber were considered to be rubber tires by those engaged in buying and selling them and that there was no difference between tires in chief value of natural rubber and tires in chief value of natural rubber and synthetic rubber combined. From the figures given in the table in defendant's exhibit A, it appears that the value of the natural rubber in the different-sized tires varied from 26 per centum to 32 per centum of the respective values of the tires and that the value of the synthetic rubber varied from 21 per centum to 24 per centum of the respective values of the tires. Since the variances are so small and the testimony indicates that all of the tires are considered the same, except as to size, and are bought and sold as rubber tires, it would be anomalous to hold that some of the tires are dutiable at 10 per centum ad valorem under paragraph 1537 (b), *supra*, and others at 15 per centum ad valorem under paragraph 216, *supra*. In our view, the statute does not require such a result, since the term "rubber" in the provision covering automobile tires is used unqualifiedly and, therefore, includes synthetic as well as natural rubber, where the synthetic product exhibits the same characteristics as the natural one.

We hold, therefore, that the automobile tires herein, sizes 6.70 x 15 and 7.10 x 15, in chief value of natural rubber and synthetic rubber combined, are properly dutiable at 10 per centum ad valorem under paragraph 1537 (b) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as automobile tires composed in chief value of rubber. To that extent, the protest is sustained. As to all other items and in all other respects, the protest is overruled. Judgment will be rendered accordingly.